Collie L. EVANS, Appellant,

v.

UNITED STATES, Appellee.

No. 6427.

District of Columbia Court of Appeals.

Argued Oct. 4, 1972.

Decided Jan. 8, 1973.

Russell S. Bernhard, Washington, D. C., appointed by this court, for appellant.

Lawrence H. Wechsler, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER and NEBEKER, Associate Judges, and HOOD, Chief Judge, Retired.

NEBEKER, Associate Judge:

This appeal from convictions under a three-count indictment charging the taking of indecent liberties with minors [1] presents evidentiary questions respecting use of an admission made shortly after the arrest, the sufficiency of corroborative evidence, and evidence respecting specific intent. A question raised at oral argument and then addressed in supplemental memoranda also merits discussion. That question is whether it was plain error to instruct in terms of the statute respecting specific intent to arouse or gratify, *inter alia,* the sexual desires of the defendant or the victims when the indictment charged only a self-serving specific intent. We find no error and affirm.

The complainants' testimony in this case shows that appellant Evans brought the three female children of high school age (Tawana, Denise and Cynthia) to his apartment, with parental consent, for the asserted purpose of giving them their first karate lesson. Karate is a Japanese system of self-defense without the use of a weapon. The lesson began with a few preliminary exercises in the living room. When Tawana could not do one of these exercises properly, Evans massaged her. She testified that during the course of the massage he opened the top buttons of her blouse and put his hand inside her brassiere and "started messing around with [her] breasts." She also testified that Evans put his hand inside her shorts and underpants and "put his finger up [her] vagina."

Testimony also revealed that Evans next began to massage Denise. She testified that he put his hand under her blouse and brassiere and felt her breasts. He then put his hand in her shorts and felt her pubic hair, at which point she pushed his hand away.

Evans then massaged Cynthia who similarly testified that he placed his hand under her shirt and brassiere and felt her breasts. He also placed his hand inside her pants "close" to her vagina. These actions as to each girl were also observed and testified to by one or both of the other two.

Upon completion of the exercises, Evans demonstrated karate to the girls. As part of the demonstration, he gave Cynthia a karate chop in the side, causing her to cry. Cynthia testified that Evans then took her into his bedroom and told her to lie on the bed. He then started toward her as if he were going to lie on top of her, but she pushed him out of the way and ran out of the room. At another point, Evans took Tawana alone into the den for a massage. She testified that he told her to take off her shorts and he then massaged her. He then took her into the bedroom, directed her to lie on the bed and took out his penis and started toward her. Tawana kicked him twice and when he fell, she ran into the living room.

When Evans drove the girls home he warned them not to discuss the lesson and threatened them if they disclosed his actions. The mothers of two of the girls testified that their daughters appeared to be disturbed upon arriving home and that they stated they did not want to take any further lessons. The girls testified that they were frightened and thus did not reveal the incidents to their mothers until the following day, at which time the police were notified.

1. D.C.Code 1967, § 22–3501.

The arresting officers testified that they went to Evans' apartment and informed him that he was under arrest for indecent acts on minors, and advised him of his *Miranda* rights.[2] On the way to the police station, Evans acknowledged during a conversation that he had some girls in his apartment for karate instructions on the evening in question. He stated that as part of the instructions he massages them "everywhere". He specifically stated that part of the massage included placing his finger in the vagina. The officers stated that Evans later said he had also massaged the breasts as part of the instruction.

Evans' testimony corroborated the fact that he had the girls at his apartment for karate instructions and that he had given each of them a massage as part of the instructions. He specifically denied, however, massaging their vaginas. Although he admitted taking Tawana into a room by herself for a massage, he denied exposing his penis, trying to get on top of her, and being kicked by her. He stated that he did not tell Tawana to take off her pants, but on cross-examination he admitted that he told her to unzip her pants so he could massage her. However, he stated that he provided her with a robe so that she would not be exposed. He denied ever putting his hand under Denise's brassiere or into her pants. He also denied taking Cynthia into the den after he struck her and caused her to cry. Evans also asserted that the arresting officers had not advised him of his rights. Significantly, he denied making any statement to them after his arrest, but we note that at a pretrial hearing he stated that he was aware of his right to remain silent, his right to counsel after arrest, and the fact that anything he said after he was arrested might be used against him.

I

To ensure that an accused is aware of his constitutional rights, Miranda v. Ar-izona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), requires that the police advise an accused of his rights prior to any interrogation. Once this knowledge is imparted to the accused, he may make a voluntary and intelligent waiver of those rights. In determining whether the accused has made such a waiver, an objective standard is applied.

"By objective standard we mean that the validity of any *Miranda* waiver must be determined by the court's inspection of the particular circumstances involved, including the education, experience and conduct of the accused as well as the credibility of the police officer(s) testimony. The court will then objectively assess all the aforementioned factors and determine whether the waiver was valid. . . . " [Pettyjohn v. United States, 136 U.S.App.D.C. 69, 72 n. 7, 419 F.2d 651, 654 n. 7 (1969).]

The courts have particularly relied on education and experience as major factors to consider in applying this standard. Pettyjohn v. United States, *supra*; Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006 (1963); Scarbeck v. United States, 115 U.S.App.D.C. 135, 317 F.2d 546 (1963); *cf.* United States v. Howard, 470 F.2d 406 (D.C.Cir., decided October 10, 1972).

In the instant case there was conflicting testimony at the pretrial hearing between the police officers and appellant as to whether the *Miranda* warnings were given at the time of the arrest. The ruling of the trial court judge reveals that he found the officers did give the warnings. There was substantial evidence to support this factual finding and we are therefore bound by it. The record shows that Evans had two years of college education and that he merely engaged in conversation while proceeding to the precinct. There is no contention that he was coerced in any way. The only issue raised was whether the required *Miranda* warnings were given. The

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

statements were, therefore, properly admitted by the trial court.

■ Evans also argues that these statements made to the police should not have been admitted since there was an apparent inconsistency in the officers' testimony at the pretrial hearing and at the trial as to appellant's exact statements. The matter of credibility of witnesses is not a matter within the province of the appellate court. Blitz v. Hobbs, D.C.Mun.App., 160 A.2d 803 (1960). This issue was appropriately one for resolution by the jury.

## II

■ In sex crimes, corroboration of the testimony of the alleged victim is required before any person may be convicted. Allison v. United States, 133 U.S.App.D.C. 159, 409 F.2d 445 (1969). In cases involving young children the courts have been particularly conscious of the requirement for corroboration of the child's testimony. Coltrane v. United States, 135 U.S.App.D.C. 295, 418 F.2d 1131 (1969); Allison v. United States, *supra*; Wilson v. United States, 106 U.S.App.D.C. 226, 271 F.2d 492 (1959). The corroboration that is required need not be direct evidence but may consist of circumstances which tend to support the victim's testimony. Allison v. United States, *supra* at 162, 409 F.2d at 448; Bailey v. United States, 132 U.S.App.D.C. 82, 405 F.2d 1352 (1968); Walker v. United States, 96 U.S.App.D.C. 148, 223 F.2d 613 (1955). Circumstantial evidence clearly may be used for corroboration. Coltrane v. United States, *supra*. In Borum v. United States, 133 U.S.App.D.C. 147, 152, 409 F.2d 433, 438 (1967), the court stated:

"While the matter of corroboration is initially for the trial court, like any other question as to the legal sufficiency of the evidence to warrant submission of the case to the jury, it is the latter's function to decide whether the standard of corroborative proof has been met. It

goes without saying that the trial court must afford the jury proper and adequate guidance to enable that determination." [Footnote omitted.]

The corroboration doctrine requires that "the case be sent to the jury with instructions making clear that a guilty verdict may not be based solely on complainant's testimony". United States v. Bryant, 137 U.S.App.D.C. 124, 128, 420 F.2d 1327, 1331 (1969).

■ Appellant, in asserting the absence of corroboration of the particular details of the acts charged, argues that it was error for the trial court not to instruct that such testimony as to detail, if uncorroborated, should be ignored by the jury. Specific corroboration of acts such as inserting his finger in the vaginas of two of the girls, or fondling their breasts is not required. All that is required is evidence of circumstances which tend to support the victims' testimony. Allison v. United States, *supra*. Here, there was corroboration of the offense in that (1) the girls testified that Evans did give the massages and during the course of the massages, inserted his hand inside the clothing of two of the girls; (2) Evans admitted on the stand the giving of the massages; (3) Evans stated to the police officers that in the course of the massages he fondled the breasts and inserted his finger in the vagina; (4) the girls appeared disturbed upon arriving home and two of them stated that they wished to take no further lessons; and (5) the offense was reported to the police the following day. This evidence is the type of corroborating evidence sufficient to meet the need. As to the jury instruction, the trial court properly charged the jury that it could not convict solely on complainants' testimony and that corroboration (properly defined) was necessary. United States v. Bryant, *supra*.

## III

■ A conviction of the offense of taking indecent liberties with a minor requires

the proving of the elements of (1) taking or attempting to take, immoral, improper or indecent liberties with a child under the age of sixteen; (2) with the intent to arouse, appeal to, or gratify the lust, passions or sexual desires of the child or of the accused.[3] The specific intent to arouse the accused may be inferred from the accused's actions. Allison v. United States, *supra*.

■ Appellant argues that the evidence was not sufficient to prove the requisite intent. Inserting his hand in the pants of the complainants around the pubic area, inserting his finger in their vaginas, and massaging their breasts are acts sufficient to give rise to an inference that he had the requisite intent at the time. Allison v. United States, *supra*.

## IV

■ As noted above, an instructional issue was raised for the first time at oral argument in which we are asked to hold as plain error a reference to an alternative jury finding on the element of specific intent which was not charged in the indictment. A careful reading of the jury charge does not reveal, as is asserted, that the jury was permitted to find a specific intent to arouse or gratify the lust, passion or sexual desires of the victims. With respect to the acts proscribed by D.C.Code 1967, § 22–3501, the trial judge merely stated:

" . . . and they read as follows. The essential elements of the offense of indecent acts on a child, each of which the Government must prove beyond a reasonable doubt, are (1) that the defendant took or attempted to take immoral, improper, or indecent liberties with a child of either sex under the age of sixteen years, and committed or attempted to commit a lewd and lascivious act upon the body or some part or member thereof of a child, and (2) that the defendant did so with the specific intent of arousing or appealing to or gratifying the lust or passions or sexual desires either of the defendant or the child or both."

The charge earlier contained the admonition that the indictment was not evidence, "it is merely the formal matter [sic—manner] of accusing a person of a crime. . . . " At the conclusion of the charge, the jury was told that it may return a guilty verdict "if, after you have considered all the evidence you are convinced beyond a reasonable doubt that the defendant has violated the law *as alleged in the indictment.* . . . " (Emphasis supplied.) Taking the jury charge in complete context and without segmenting it for isolated consideration, as we are required to do,[4] we find no error as to this belated contention.[5]

The judgments of conviction are

Affirmed.

3. Note 1, *supra*.

4. Belton v. United States, 127 U.S.App. D.C. 201, 382 F.2d 150 (1967).

5. Even if the point was considered to be error, it does not, in the context of this record, amount to plain error affecting substantial rights. *Cf.* Jackson v. United

States, 123 U.S.App.D.C. 276, 359 F.2d 260 (1966). We are likewise convinced that under the standard of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reversal would not be required on such an assumption of error.